**In the Matter of MATTHIESSEN & HEGELER ZINC COMPANY, Frederick L. Carus, Herman D. Carus, all individuals and d/b/a Matthiessen & Hegeler Zinc Company, Alleged Bankrupts.**

**Bankruptcy No. 79 B 4354.**

United States Bankruptcy Court,
N. D. Illinois, E. D.

March 11, 1981.

Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for alleged bankrupt.

J. Barton Kalish & Associates, Chicago, Ill., for petitioning creditors.

## OPINION AND ORDER

RICHARD L. MERRICK, Bankruptcy Judge.

This cause is presented upon the debtor's motion to dismiss an amended involuntary petition to have *Matthiessen & Hegeler Zinc Company* (hereinafter "M & H") declared a bankrupt. The original involuntary petition named M & H as the only alleged bankrupt. The amended petition added six individuals as alleged bankrupts, four of whom have been dismissed already. The remaining two individuals are Frederick L. Carus and Herman D. Carus, officers, shareholders and directors of M&H. When all of the legal niceties have been disposed of and the broad picture has been revealed, the real issue before the Court will be seen as the question of whether the amended petition should be dismissed with prejudice or without prejudice.

The original petition was filed May 11, 1979 against M & H only and alleged that it had committed an act of bankruptcy within four months preceding the filing by permitting a judgment to be filed in the office of the Recorder of Deeds of La Salle County, Illinois and by not vacating the judgment lien within thirty days, which constitutes the third act of bankruptcy (Bankruptcy Act of 1898, as amended, § 3(a)(3) 11 U.S.C. § 21). The petition was filed by three creditors, one of which was mis-named in the description of its claim.

On June 16, 1980 an amended petition was filed which added six individuals as alleged bankrupts and which listed the same act of bankruptcy verbatim. It also listed five additional alleged acts of bankruptcy, of which only three are recognizable as falling within a pattern of § 3(a), as follows:

1. A judgment for $91,279.50 was entered in the Circuit Court of La Salle County on April 5, 1979 and recorded on a date which was not specified;

2. A judgment for $15,359.77 was entered in the Circuit Court of La Salle County on June 22, 1979 and recorded on a date not specified;

3. Within one year preceding the filing of the amended petition the alleged bankrupt had transferred money to a member of the family of one of the added alleged individual bankrupts;

4. Within one year of the filing of the petition M & H had transferred all of its assets to National Acceptance Corporation in payment of a debt of $1,720,560.53, of which $1,148,000 was the debt of Carusbrooke Farms Incorporated owned and controlled by the same persons who owned and controlled M & H (the transfer was July 25, 1978);

5. On August 2, 1979 all of the personalty owned by M & H was sold at a Sheriff's sale to Continental Metals, which was owned secretly by members of the Carus family.

One of the questions which arises in connection with the amended petition is whether the additional acts of bankruptcy are part of the act of bankruptcy alleged originally or whether they are separate from it. All five of the additional acts so clearly are unrelated to the first act that is not even necessary to describe them in order to delineate the differences. The judgments listed as the first and second added acts of bankruptcy were by different plaintiffs for different types of materials supplied and in separate law suits from that in the original petition. The transferees in the third, fourth and fifth added acts of bankruptcy were completely unrelated to the judgment, the recording of which was cited as the alleged act of bankruptcy in the original petition.

Rule 15(c) of the Federal Rules of Civil Procedure frequently is cited with respect to relation back of amended pleadings. The whole Rule has been incorporated by reference into Rule 715 of the Rules of Bankruptcy Procedure. Rule 15(c) speaks in positive terms:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the pleading..."

By implication Rule 15(c) suggests that if the claim of the amended pleading did not arise out of the conduct, transaction, or occurrence described in the original pleading, the amended pleading does not relate back. The doctrine of relation back comes into play most frequently where statutes of limitation have run between the date of the filing of the original petition and the date of the filing of the amendment. If the amendment relates back to the time of the filing of the original petition, it falls within the required time period. If the amendment does not relate back, the cause of action would have been instituted after the statute of limitations had run and consequently, the cause of action would be barred.

The doctrine of relating back has received considerable attention in involuntary petitions filed under the Bankruptcy Act of 1898 because § 3(b) of that Act imposes a four-month period of limitations:

"A petition may be filed against a person within four months after the commission of an act of bankruptcy."

The five alleged acts of bankruptcy which were added by the amended petition are set forth below in a comparison of the date of their respective occurrences with the dates of the filing of the original petition and of the amendment:

| Amended Acts | Date of Occurrence | Original Filing | Amended Filing |
| --- | --- | --- | --- |
| 1st | April 5, 1979 | May 11, 1979 | June 16, 1980 |
| 2nd | June 22, 1979 | May 11, 1979 | June 16, 1980 |
| 3rd | After June 15, 1979 | May 11, 1979 | June 16, 1980 |
| 4th | After June 15, 1979 | May 11, 1979 | June 16, 1980 |
| 5th | August 2, 1979 | May 11, 1979 | June 16, 1980 |

If the amended pleading should relate back to the time of the original pleading, the first of the alleged acts of bankruptcy would have occurred within the requisite four months of the filing, as it took place five weeks before. The other occurrences were after the date of filing, so that on a strict relation back theory they were non-existent on the date of the filing of the original petition. If the amended pleadings should not relate back, all of the occurrences which had specific dates would have been more than four months before the date of the filing.

█ The petitioning creditors have not addressed the question of the relation back of the amended pleading nor the fact that the five amended alleged acts of bankruptcy are all independent of and distinct from the incident cited in the original pleading. The brief is limited to the argument that as a matter of discretion this Court should permit the pleading to be filed. As we view the pleading, it does not make any difference whether or not as a matter of general equity jurisprudence we permit the pleading to be filed. As a matter of bankruptcy law those five occurrences cited in the pleadings do not create a jurisdictional basis upon which an involuntary bankruptcy petition can stand. They are independent, unrelated to the act alleged in the original pleading, and do not relate back. They did not take place within four months of the date of the filing of the amended pleading, so if our discretion were disposed to admit them in order that a broad view of the relationships between the parties might be taken, our logic would tell us that they merely would clutter the proceedings because the present proceeding must stand or fall on the basis of the act originally pleaded. It would have been proper for the amended complaint to amplify that description of the occurrence, but it did not do so. The count of the amended complaint respecting the occurrence originally alleged as an act of bankruptcy is a verbatim repetition of the original complaint. Consequently the amended complaint adds nothing with respect to a jurisdictional basis for determining M & H to be a bankrupt.

The general proposition of relation back is so firmly established as not to require the

citation of authorities. It is discussed in Collier on Bankruptcy, Paragraph 18.26, with a plethora of cases cited. In non-bankruptcy actions the doctrine probably preceded the Federal Rules of Civil Procedure by 150 years, and in bankruptcy actions by 100 years. Drawing the time boundary is difficult because the earlier cases would not even allow the amendment if it related to a new occurrence. With the expansion of the broadened view of doing equity, the practice became more a matter of discretion by the Court as to whether or not the amendment should be allowed. If it was allowed, it related back if reasonably associated with the original charge and did not if otherwise. In the instant case the amendment will not be allowed because it would be meaningless if it were allowed. Only one act of bankruptcy is required to establish jurisdiction under the Bankruptcy Act of 1898. None is required under the Bankruptcy Reform Act of 1978. From what the Court has been able to glean from the pleadings it appears that opportunities existed for preferences and fraudulent transfers to be made. If they did exist and are to be corrected, it is up to the attorneys for the petitioning creditors to present the issues in a manner which permits remedial action to be taken by the Court.

The amended complaint, however, did add six individuals as alleged bankrupts because of their relationship with M & H. Four of those individuals subsequently were dismissed from these proceedings on their own motions. The remaining two, who were officers, directors and shareholders of M & H have not contested the jurisdiction of this Court over them even though with respect to them the amended complaint did not allege insolvency and did not allege any acts of bankruptcy other than acts of bankruptcy on the part of the corporation. These individuals, Frederick L. Carus and Herman D. Carus, allegedly were involved in the transfers of assets from M & H to other corporations dominated by the Carus family. Those transfers, however, do not fall within the definitions of "acts of bankruptcy" contained in § 3(a) of the Bankruptcy Act, nor do they fall within the time periods of § 3(b) of the Bankruptcy Act.

If what is alleged to have occurred in the inter-corporate transfers, actually occurred, there were severe violations of non-bankruptcy law respecting bulk sales and transfers in defraud of creditors which would create a civil liability, and possibly a criminal liability as well, on the part of Messrs. Carus. These two can be made defendants in an adversary proceeding brought in this Court or in a civil proceeding brought in the state court in the event that this proceeding is dismissed. They can become defendants in common with M & H without having to become themselves bankrupts or debtors in a bankruptcy proceeding.

A brief sketch of the historical basis for "acts of bankruptcy" may be in order so that the issues respecting Messrs. Carus and the bulk transfers by M & H to affiliated corporations can be brought into focus. The original bankruptcy law in the Anglo-American tradition was enacted in 1542 (34 and 35 Hen. VIII, C.4 (1542–43)) as a means of obtaining *in personam* jurisdiction over debtors who were avoiding service of process by

(a) fleeing the jurisdiction,

(b) taking asylum in some religious sanctuary, or

(c) keeping within their own houses.

The procedure which was adopted by that initial Bankruptcy Act was to provide that each of the foregoing avoidances was a crime. As such, the Crown could proceed against the person's property without service of process, and a commissioner could collect the bankrupt's property for distribution among his creditors. This procedure for dealing with creditors collectively was similar to several earlier statutes for aiding the collection process for individual creditors. Originally it was necessary that there be an "act of bankruptcy" which triggered the criminal enforcement process.

Over the following three hundred years several gradual transitions took place in the jurisdictional framework. One was that the methods of avoiding service came to be

reduced, particularly with the elimination of religious institutions as sanctuaries, although in the Bankruptcy Act of 1800 "to keep his or her house" still continued to be an act of bankruptcy. The criminal aspect of it had been eliminated, however, and it was just one act of bankruptcy along with others. The acts of bankruptcy which came to be the triggering mechanisms to establish a jurisdictional foundation were occurrences which created presumptions of an inability to pay. The emphasis shifted from a direct indication of avoidance of payment on the part of the debtor to evidence of an insolvent condition, as shown in § 3a:

(1) "... permitted to be concealed or removed any part of his property..."

(2) "... suffered a preferential transfer..."

(3) "suffered or permitted ... a lien ..."

(5) "... suffered ... the appointment of a receiver or trustee ..."

The abrupt change which occurred with the Bankruptcy Act of 1898 was to abandon the concept of insolvency which, going back almost to the beginning of recorded time, had been the jurisdictional basis for procedures governing the collective payment of claims of multiple creditors, namely, an inability on the part of the debtor to pay his debts and to substitute for it a balance sheet test of the excess of debts over assets. The balance sheet test of § 1(19) of the Bankruptcy Act was continued in § 101(26) of the Bankruptcy Code, and the traditional test which was inserted by the Chandler Act with respect to rehabilitation proceedings was abandoned. With respect to Chapters 11 and 13 the change in definition probably will not have any significant consequences because the requirement of insolvency was eliminated.

■ "Acts of bankruptcy" are purely jurisdictional and of themselves do not establish a basis for a redistribution of assets of the alleged bankrupt. They merely establish the forum for an arbiter to determine whether or not persons entitled to equal treatment under prevailing bankruptcy law have been deprived of that treatment by preferential or fraudulent payments or transfers to others or by the concealment of assets.

The one act of bankruptcy alleged in the original complaint was sufficient to serve as the basis for an involuntary bankruptcy proceeding if the allegations could stand up under attack. The original answer appeared to have found several flaws in the petition. The motion to dismiss has attacked successfully the five added alleged acts of bankruptcy. It also has attacked successfully the addition of the two individuals as alleged bankrupts. The motion to dismiss has not attacked the act of bankruptcy in the amended petition which merely was a repetition of the same ground in the original petition, other than on the ground that the amended petition is not verified. The original petition, however, which contained the same allegation had been verified so that this does not represent a major obstacle to proceeding with the case. Verification can be supplied at some future date. This is particularly true because in the instant case the incident which is cited as being the act of bankruptcy can be verified readily by independent means, both aspects of it are matters of public record; one is the entry of a judgment and the other is a recording of that judgment.

To recapitulate, the original creditors' petition was filed May 11, 1979. On June 4, 1979 M & H filed an answer and counterclaim, which treated the contentions of the three petitioning creditors as follows:

(a) Lynch Metals—it denies any indebtedness;

(b) United Mine Workers—although United Mine Workers is the petitioning creditor—the claim is of an indebtedness to United Steel Workers— the answer denies an indebtedness to United Steel Workers;

(c) Ace—Doran Hauling—the answer admits the indebtedness.

The answer admits the recording of a $12,-566.44 judgment in favor of M & H Equipment, Inc. on January 15, 1979 and the failure to remove it within 30 days. There

is a counterclaim of $250,031.31 against Lynch for metals processed.

At various status calls over the next eight months the Court was advised that the parties might work out their differences and that creditors' positions would not be impaired through the passage of time because M & H had been liquidated. Finally on March 10, 1980, in an effort to cause the case either to be activated or to be eliminated from the Court's calendar, the Court entered a rule to show cause why the case should not be dismissed. This produced some action because the petitioning creditors substituted attorneys and filed an amended petition. Apparently the successor attorneys mistook the purpose of an originating petition in an involuntary bankruptcy proceeding because the amended petition is more in the nature of a complaint which might be filed in an adversary proceeding in either a bankruptcy court or other civil court of general jurisdiction. In its present form, however, it does not comply with Part VII of the Rules of Bankruptcy Procedures as a means of bringing the methods of liquidation of M & H into controversy. The only act of bankruptcy which it alleges properly with respect to the four-month period of limitations is the recording of the judgment on January 15, 1979, and the failure to remove the lien within thirty days. The confusion between the United Mine Workers and the United Steel Workers is repeated. The Lynch claim presumably will be met with the same denial and counterclaim if M & H should be required to answer to the amended petition.

This Court does not have before it the question of whether or not the Carus family and their affiliated corporations unfairly deprived creditors of their rights during the liquidation sales and transfers from M & H. If that was the circumstance, the issue can be raised properly in several ways.

The suggestion in the petitioning creditors' brief that the amended petition be treated as if it were an originating petition under the Bankruptcy Code is completely inappropriate. Only one bankruptcy proceeding can exist with respect to a given

bankrupt, or debtor. There has been no suggestion that the Messrs. Carus are insolvent, and if they have misbehaved, they can be made to answer for that in other ways than the ill-founded theory that they are themselves M & H.

The amended complaint is dismissed without prejudice.